**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 29 2013, 9:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEVEN J. SERSIC**
**KEVIN C. SMITH**
Smith Sersic
Munster, Indiana

ATTORNEYS FOR APPELLEE:

**JULIE R. MURZYN**
**RANDALL J. NYE**
O'Neill, McFadden & Willett
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAY ORTEGA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1205-CT-219 |
| | ) | |
| SUSKO CORPORATION, INC., | ) | |
| D/B/A OUR PLACE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffrey J. Dywan, Judge
Cause No. 45D11-1011-CT-205

**January 29, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, an unknown individual fired a gun through the rear door of a tavern. A bullet struck Ray Ortega, the plaintiff in this case, and another individual. Ortega filed suit against Susko Corporation, d/b/a/ Our Place (Our Place), claiming that Our Place was liable in damages for the injuries he sustained from his wound because Our Place breached its duty to protect him from the foreseeable shooting.

Ortega presented his case to a jury, and at the close of his case-in-chief, Our Place moved for judgment on the evidence, asserting that Ortega failed to present sufficient evidence to support an inference that the shooting was foreseeable. The trial court granted Our Place's motion, observing, among other things, that Ortega failed to produce any evidence that Our Place should have anticipated that an unknown person would fire a gun through the open rear door of the tavern. We affirm the trial court's judgment.

## FACTS

Our Place is a small neighborhood bar in North Hammond that is owned and managed by Michael Susko. The customers of Our Place mostly live in the vicinity and are retirees. Susko works approximately six hours every day and employs one bartender per shift.

Susko routinely kept both the front and back doors of Our Place propped open during nice weather. On April 30, 2010, Our Place opened at 3:00 p.m., and Susko worked until midnight. As Susko was preparing to go to the tavern's office to sleep, he asked someone to check the door and told the bartender, Rachel Szymborski, to get him if she needed anything.

At approximately 1:45 a.m., Ortega walked into the tavern. About fifteen other customers were at the bar, and "everyone seemed fine." Tr. p. 300. Ortega had been in Our Place on prior occasions and was a member of a dart team. Ortega had never witnessed any violence or seen anything that he considered to be a threat.

After staying at the bar for about an hour, Ortega went to the restroom and then planned to leave. Ortega noticed that some of the patrons were arguing, but the disagreement never became physical. Ortega did not see any weapons, and there did not seem to be any threat of violence.

However, at approximately 2:30 a.m., someone fired multiple gunshots into the tavern from outside the back door. Ortega was shot as he exited the restroom. Another individual was shot while sitting on a barstool. At some point, Ortega heard the bartender say that she saw someone stick a hand through the back door and open fire. Susko was asleep in the office when the shooting occurred.

A subsequent police investigation could not determine who shot the two men or the motive for the shooting. Susko had no idea why someone would randomly and unexpectedly commit such an act. Susko was unaware of any shootings in the neighborhood prior to this incident, and he had no personal knowledge of anyone using or threatening to use a gun at the tavern before the incident. There also had been no previous problems associated with back door access to the tavern.

On April 24, 2010, Hammond Police Chief Brian Miller received a tip that there was going to be a "gang party" at Our Place. Tr. p. 37. Chief Miller did not warn Susko

about this information, and there is no evidence that a gang party ever took place. There was no showing that Ortega was a gang member or that the shooting was gang related. No motive for the shootings was ever established, and the gunman was never apprehended.

Susko was aware of only one fight at the tavern "a long time ago" that involved an incident where he was punched while attempting to call the police. Id. at 207-08, 212, 246. One of the customers had been a "regular" at Our Place since 2008, and she had never seen any fights or other acts of violence. Id. at 249.

On September 20, 2010, Ortega filed a complaint against Our Place. Ortega claimed, among other things, that he was a business invitee of the tavern. As a result, Ortega claimed that Our Place owed him and all business invitees a duty of care to provide a reasonably safe environment. Ortega alleged that when he was shot, Our Place breached this duty by failing to provide proper security to protect its customers and by failing to protect him from a reasonably foreseeable criminal assault that resulted in his injuries. Ortega claimed that Our Place's negligence and breach of duty were the direct and proximate cause of his injuries.

A jury trial commenced on February 21, 2012. After Ortega presented his case-in-chief, Our Place moved for a judgment on the evidence under Indiana Trial Rule 50, claiming that Ortega failed to present sufficient evidence to support an inference that the shooting was foreseeable. The trial court granted Our Place's motion and issued an order, which provided:

4

There is no evidence of prior shootings, or threats of shootings at the Defendant's tavern. There is no evidence that the shooter was in the tavern on the night in question, or at any other time. There is no evidence that the Defendant had any knowledge that the shooter was anywhere near the tavern. There is no evidence that the shooter had any relationship whatsoever with the shooting. There is no evidence that the tavern had any knowledge that the shooter had a gun, or that the tavern had even the opportunity to learn that the shooter had a gun. There is no evidence that the shooter had made threats to the Plaintiff or anyone else in the tavern before the shooting, or had acted in such manner as to put a reasonable person on notice of the potential for violence. There is no evidence that the Plaintiff, or any other customer in the tavern, felt that the shooter was a danger to themselves or anyone in the tavern, or that such concerns were made known to the Defendant.

Considering this evidence as required under the standard to be applied under TR 50, the evidence fails to demonstrate or to support an inference that this shooting was foreseeable to Susko Corporation. Judgment must be entered for the Defendant and the case taken from the jury's consideration.

Appellant's App. p. 5.

Ortega now appeals.

DISCUSSION AND DECISION

I. Standard of Review

When challenging the grant of a motion for judgment on the evidence, our standard of review is the same that governs the trial court in making its decision. Peru Sch. Corp. v. Grant, 969 N.E.2d 125, 132 (Ind. Ct. App. 2012), trans. denied. Judgment on the evidence is properly granted when all or some of the issues in a case tried before a jury are not supported by sufficient evidence. Id. A party may move for such judgment on the evidence after the plaintiff's case in chief or after all the evidence in the case has been presented and before judgment. Ind. Trial Rule 50(A). We will examine only the

5

evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the non-movant, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. Peru Sch. Corp., 969 N.E.2d at 132. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. Id.; see also T.R. 50(A).

## II. Ortega's Contentions

Ortega argues that the trial court erred in granting Our Place's motion for judgment on the evidence because Ortega contends that he presented ample evidence that Our Place knew, or should have known, that the shooting was foreseeable. Thus, Ortega argues that the trial court's function "was simply to instruct the jury and allow them to decide whether the defendant has breached its duty to . . . [him]." Appellee's Br. p. 6.

We note that although proprietors owe a duty to use reasonable care to protect business invitees from injuries that are caused by other patrons and guests on the premises, our Supreme Court has held that this duty "only extends to harm from conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor." Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1052 (Ind. 2003). Additionally, while reasonable foreseeability is ordinarily a question of fact for the jury to decide, in the context of duty, which is a question of law, reasonable foreseeability is determined by the court. Kroger v. Plonski, 930 N.E.2d 1, 7 (Ind. 2010).

Foreseeability is determined by application of the totality of the circumstances test, where "a Court considers all the circumstances surrounding an event including the

6

nature, condition, and location of the land, as well as prior similar incidents to determine whether a criminal act was foreseeable." Delta Tau Delta v. Johnson, 712 N.E.2d 968, 972 (Ind. 1999). A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the land owner knew or should have known that the criminal act was foreseeable. Id. at 973. Indeed, foreseeability can be proven by means of evidence that the proprietor was on notice of the presence of an unruly customer, or that a fight might ensue. Paragon, 799 N.E.2d 1048, 1052 (Ind. 2003).

In Delta Tau Delta, our Supreme Court held that a sexual assault on a college student was foreseeable based on two specific similar incidents of sexual assault at the same fraternity chapter house. In addition, the month before this sexual assault occurred, the fraternity was provided with information concerning rape and sexual assault on college campuses, including notice that the group most likely to commit rape on the college campus was a fraternity. Id. at 973-74.

However, in Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc., 741 N.E.2d 383 (Ind. Ct. App. 2000), it was determined that a tavern did not owe a patron who was shot a duty to protect him from the criminal act of another customer. It was determined that there was no evidence of any prior or similar shooting incidents outside the tavern that would have alerted the business to the likelihood that a shooting would occur. Also, evidence of prior fights outside the tavern was insufficient to show that the

7

shooting was foreseeable. Id. at 387-88. Thus, we concluded that the trial court properly entered summary judgment for the tavern.

In this case, there is no evidence of prior shootings or threats of prior shootings at Our Place before the one that occurred on May 1, 2010. Ortega did not present any evidence about the identity of the shooter or that the gunman was even in Our Place on the night of the shooting. As noted by the trial court in its order, there was no evidence that the gunman was in any way connected to the tavern, and there was also no evidence that Susko or anyone else associated with Our Place had any knowledge or suspicion that anyone in the vicinity had a gun. In other words, Ortega did not present evidence of an altercation that could have alerted Our Place to any hostility that involved the customers. There was nothing to alert Susko that anyone in or near Our Place had the propensity to commit this shooting.

In short, Ortega failed to present sufficient evidence to support an inference, without undue speculation, that the shooting was foreseeable to Our Place. As a result, we conclude that the trial court properly granted Our Place's motion for judgment on the evidence.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.

8